JOSIAH PARSONS *vs.* ISAAC R. CLARK & another.

Hampshire. Jan. 26.— May 5, 1882. ENDICOTT & FIELD, JJ., absent.

If a creditor, by request of a third person, forbears to insist upon having collateral security for his debt given directly to himself by his debtor, and instead thereof it is agreed that the property of the debtor shall be transferred by way of security to such third person, who shall thereupon and as part of the same transaction become responsible for the debt to the creditor, and this is accordingly done, a promissory note given by such third person to the creditor in pursuance of such agreement is for a valuable consideration.

B. was indebted to A., which indebtedness was secured in part by a mortgage of real estate. A. desired additional security, and B., who was unwilling to give such security directly to A., was willing to give a mortgage to C., to whom he was also indebted, and A. consented to this, provided C. would give to him a guaranty to the amount of $3000. B. accordingly gave a mortgage to C. with a note for $12,000, "this note and mortgage being collateral for all loans to me by C. and all his liabilities on my account, including his guaranty given to A. for what I owe him to date;" and C. gave to A. his note for $3000. A. did not see B. personally in this transaction, and B. did not know of the form in which C. assumed liability to A., although he knew of the existence of an outstanding guaranty from C. to A., which A. then held and afterwards surrendered. *Held,* on a bill in equity by A. against B. and C., that the mortgage was taken by C. upon the trust, first, to pay A. the indebtedness of B. to him not otherwise secured, to an amount not exceeding $3000, second, to indemnify himself (C.) against loss on account of money lent to and liabilities incurred for B., and, third, to pay the balance, if any, to B.; that the trust was not subordinate to C.'s right to be first secured for the whole amount of his claim against B., and was not to be held for the benefit of C. and A. *pro rata;* and that A. should apply upon B.'s debt to him the value of the security which he received from B., which was applicable to such debt, and conditional judgment should be entered for the balance.

BILL IN EQUITY, filed January 9, 1879, under the Gen. Sts. c. 113, § 2, *cl.* 11, against Isaac R. Clark and Julia E. Ranney, to reach and apply to the defendants' debts to the plaintiff, his equitable interest in real estate conveyed in mortgage by said Clark to Ranney, alleged to be for the benefit of the plaintiff, and to have a trust declared for his benefit in the mortgaged property.

Hearing, on the report of a master and exceptions thereto, before *Lord,* J., who ordered a decree to be entered in favor of the plaintiff, and reported the case, which appears in the opinion, for the consideration of the full court.

*C. Delano & J. C. Hammond,* for the plaintiff.

*D. W. Bond,* for the defendants.

C. ALLEN, J.    From the statement of facts found by the master, it appears that the plaintiff held claims against Clark, which were secured in part by a mortgage of real estate, and that he went to Clark's house for the purpose of obtaining additional security, and that Clark (who was sick) was unwilling to give such additional security directly to the plaintiff, but was willing to give a mortgage to his sister, Mrs. Ranney, to whom he was also indebted; and the plaintiff consented to this, provided that Mrs. Ranney would give to him a guaranty to the amount of $3000, and accordingly Clark gave such mortgage to her, with the note for $12,000, and she gave to the plaintiff her note for $3000.    The plaintiff did not see Clark personally in this negotiation.

1. The first question presented for consideration is whether the master was justified in his finding, as to the consideration of the note of $3000 given by Mrs. Ranney to the plaintiff.    If a creditor, by request of a third person, forbears to insist upon having collateral security for his debt given directly to himself by his debtor, and instead thereof it is agreed that property of the debtor shall be transferred by way of security to such third person, who shall thereupon and as a part of the same transaction become responsible for the debt to the creditor, and this is accordingly done, a promissory note given by such third person to the creditor in pursuance of such agreement is for a valuable consideration.    This is in substance the transaction as found by the master.    It is not like a case where a creditor merely forbears to press for the payment of a debt due from his debtor, without any agreement to continue such forbearance for any length of time, and where he may take steps to enforce his debt at any moment; *Manter* v. *Churchill*, 127 Mass. 31; but this is the case of a security given by a debtor to a third person, in consideration that such third person will assume a responsibility to the creditor.    When such responsibility is actually assumed, in pursuance of such arrangement, there is no doubt as to the sufficiency of the consideration therefor.    See *Stone* v. *White*, 8 Gray, 589, 595, in which case the securities, according to the averment of the declaration, were to be given to the surety, who alone defended the action, by the original promisors of the note, and not by the plaintiff, as inadvertently stated in the opinion.

2. The next question is, whether the master was justified in finding that the mortgage was taken by Mrs. Ranney upon the trust, as set forth in the report: first, to pay to the plaintiff the indebtedness of Clark to him; second, to indemnify herself against loss on account of money lent to and liabilities incurred for Clark; and third, to pay the balance, if any, to Clark. The objection does not rest upon the ground that the master was not warranted by the evidence in coming to the conclusions at which he arrived; but upon the ground that, taking the whole of the facts stated in the report together, it is apparent that there was no such trust. It is urged that Clark did not know of the existence of Mrs. Ranney's note to the plaintiff of $3000; that there was an outstanding guaranty from her to the plaintiff, which the plaintiff then held, and which he afterwards surrendered; that Clark knew of the existence of this guaranty; and that Clark accordingly cannot be deemed to have intended to secure Mrs. Ranney for her liability on the note; so that the finding of the master to the effect that she took the mortgage in trust to pay to the plaintiff the debt of Clark to him, to an amount not exceeding $3000, according to the tenor of the note, is inconsistent with the other parts of his report. But, taking the whole report together, no such inconsistency will be found to exist. It was not necessary that Clark should know the particular form of the instrument by which she would become responsible for his debt. Nor is the language of Clark's note of $12,000, ("this note and mortgage being collateral for all loans to me by her and all her liabilities on my account, including her guaranty given Josiah Parsons for what I owe him to date,") stating the liabilities for which it is to be held as collateral, limited to the guaranty which she had already given to the plaintiff. That guaranty was not put in evidence, so far as appears. The master refers to it in such a manner as to imply that it was given to indemnify the plaintiff against liability assumed by him to other parties, for Clark's benefit; and not to secure a direct debt of Clark to him. But, however this may be, the report shows that Clark, though unwilling to give a mortgage directly to the plaintiff, was willing to give one to his sister, Mrs. Ranney; that the plaintiff consented that the mortgage might be given to her, if she would

give her guaranty to him to the amount of $3000; that in pursuance of the arrangement then and there made, by the mutual agreement of the parties, she executed and delivered to the plaintiff the note of $3000; and, at the same time, Clark executed and delivered to her the note of $12,000; and on the same day, and as a part of the same transaction, and as collateral security for the payment of said note, he executed and delivered to her the mortgage.   Under these findings, it must be assumed that the other finding, in these words, " I do not find that he [Clark] then knew of the note for $3000 given that day by Mrs. Ranney to Mr. Parsons," means only that he did not know of the particular form in which she assumed a liability to the plaintiff.   It is not a case where she secretly, and for some purpose of her own, consented to enter into a liability for a debt of Clark, not contemplated by him, and not intended to be secured by the note and mortgage which he gave to her.   Taking the whole report together, it is rather a case where it was understood and agreed that she should assume a responsibility for Clark to the plaintiff, but the form in which it should be done was not understood by Clark.   With this construction of the master's report, his finding of the trust upon which she took the mortgage was warranted.

3. The next objection urged on behalf of the defendants is, that by the true construction of the note of $3000, if there was a trust in favor of the plaintiff, it was either subordinate to the right of Mrs. Ranney to be first secured for the whole amount of her own claim against Clark, or else should be held for the benefit of herself and the plaintiff in proportion to the amount of their respective claims.   The difficulty however with this argument is, that she assumed a personal responsibility to the plaintiff by her note of $3000, and it is to enforce this responsibility that the plaintiff seeks to avail himself of the security in her hands.   It is true that she has other property subject to attachment, but this fact will not prevent the exercise of the jurisdiction of the court to enforce the trust in the mortgaged land; and, jurisdiction for this purpose being assumed, the plaintiff may have in this suit the full relief which can be afforded by an appropriation of her whole interest in the mortgaged property, so far as she may be bound to indemnify him for Clark's indebtedness.

4. The general right of the plaintiff being thus established, the question remains, for what amount conditional judgment shall be entered in his favor. It appears that the amount due him from Clark on September 23, 1880, was $4244.15, and that he held as security a mortgage of real estate given to him by Clark in 1867, the value of which was found by the master. The decree which was entered provides that the conditional judgment shall be for the sum of $3612.50, being the full amount of the note of Mrs. Ranney to the plaintiff with interest thereon to September 23, 1880; and that, upon the payment of said sum within two months by the defendants, or either of them, the mortgage to Mrs. Ranney shall be discharged of the trust therein for the plaintiff's benefit; and that, if Mrs. Ranney shall redeem and pay the full amount due from Clark to the plaintiff, she shall be subrogated to the plaintiff's interest in all his collateral securities therefor. The defendants object to this decree, and contend that the plaintiff should be held to apply the security in his own hands to the satisfaction of his demand, *pro tanto;* and this objection we think should prevail. The master finds that the trust upon which Mrs. Ranney took her mortgage was, in the first place, to pay to the plaintiff the indebtedness of Clark to him, not otherwise secured, to an amount not exceeding $3000; and, on an examination of the report in detail, as well as of the evidence reported by the master, it appears to be just and equitable to require the plaintiff in the first place to apply upon his debt the value of the security which he received directly from Clark, and which is applicable to said indebtedness, and that conditional judgment should be entered for the balance, with interest thereon after September 23, 1880.

It is not necessary to consider here how far a court of equity will interfere, under ordinary circumstances, in favor of a person in the situation of Mrs. Ranney, who should bring a bill to compel the creditor to exhaust his other security before enforcing any remedy against the guarantor, or to deal minutely with the numerous authorities applicable in such a case. 1 Story Eq. Jur. §§ 499, 559. 2 White & Tudor's Lead. Cas. in Eq. (3d Am. ed.) 235, 274. Here the creditor comes into a court of equity seeking its aid under circumstances which show, as

the master has found, and as we are fully satisfied from the evidence in the case, that his equity to the security held by Mrs. Ranney is only to the extent of indemnifying him for the unsecured balance of his debt, after exhausting his prior security.

The decree will therefore be modified in accordance with this opinion, and the details settled by a single judge.

*Decree accordingly.*